UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

ELIYOHU MINTZ and ERIC SCHWARTZ,

Plaintiffs,

-against-

STEVEN NIGRELLI, in his official capacity,
RONALD STEVENS, in his official capacity,
and SUSAN J. MALLERY, in her official capacity,

Defendants.

-------------------------------------------------------------------x

Case No.: 1:23-CV-0795 (MAD/CFH)

**DECLARATION OF ERIC SCHWARTZ**

ERIC SCHWARTZ, declares pursuant to 28 U.S.C. § 1746 that:

1. I, Eric Schwartz, am over the age of 18 and a plaintiff in the above-captioned matter. I make this Declaration of my own personal knowledge and if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2. I submit this Declaration in support of Plaintiffs' application to preliminarily and permanently enjoin portions of the New York State Penal Law that criminalize conduct protected by the Second Amendment.

3. I am employed by Oorah, Inc. ("Oorah") at its Schoharie County, New York location.

4. Oorah is a non-profit company that provides year-round activities for Orthodox Jewish children, adults, and families.

5. Oorah owns over 1,000 acres of property located in a remote and rural part of Schoharie County, New York that is used year-round to host many programs and activities, including a summer camp.

6. The kids' summer camp program – "The Zone" – consists of two sleepaway camps – one for boys and one for girls - ages 9 through 18.

7. The Boys' camp is located in the Town of Jefferson and the Girls' camp is located in the Town of Gilboa. Each campus is comprised of 500+ acres upon which numerous buildings are located.

8. I have been involved with Oorah as a patron and guest for many years, and have been employed full-time at The Zone for over a year as the Assistant Manager of the Boys' Camp. In that connection, I reside full-time at The Zone property in a residence located on the Boys' Camp campus.[1]

9. The activities at boys' camp are numerous; it is common for the boys to travel from building to building to engage in various activities. The summer camp offers a whole host of fun activities for the boys, which in the past has included arts and crafts, culinary arts, woodworking, photography, painting, music instruction; dancing and singing; swimming and water sports; outdoor sports including archery, bike riding, ziplining, and rock climbing; an animal farm where they can feed camels, ride horses, and play with bunnies; and inside games that include ping pong, gaming, and billiards.

10. At any given moment, the children can be located at any number of places – inside and outside, spread out across the boys' campus, which spans over 500 acres. Unlike a singular school building in which all classes are conducted and which can (theoretically) be locked down as one continuous compound, a "lock down" of the Boys' Camp would be virtually impossible in the event of an active threat emergency.

[1] Outside of the summer months, the Boys' Camp location is hosts various programs during the Jewish holidays of Rosh Hashanah, Sukkot, Passover, and Shavuot.

11. In the event of an active threat, the children could be located anywhere from boating on the lake, swimming in the pool, hiking, or engaging in any number of outdoor activities.

12. An immediate response from law enforcement to an acute emergency involving an active threat to life and safety at the camps is highly improbable, as the Schoharie County Sheriff's Office is located approximately 40 minutes away and traveling to the Oorah campuses requires traversing winding rural local roads and State routes.

13. Likewise, the New York State police barracks are a similar distance away, if not farther, and likely suffer the same challenges as the Sheriff's Office.

14. Apart from a human threat event, the presence of wild animals places the adult and child patrons, myself, and my family at physical risk.

15. Wild animals inhabit the woods surrounding the campus, including bear, fox, and coyote.

16. Unlike a school, the campus is not conducive to a lock-down scenario should an active threat – human or animal - occur. Attacks generally occur quickly and without notice, with physical harm occurring before law enforcement can be notified and/or respond.

17. The Zone is a well-known facility in upstate New York - among the Orthodox Jewish community as well as the local community. As Orthodox Jews, myself, the staff, and patrons of The Zone are easily recognizable and identifiable to the public as such, based on our manner of dress and customs, and have been openly targeted over the years for discriminatory acts including yelling ethnic and hateful slurs and throwing objects, including Molotov cocktails.

18. There have been prior incidents where intruders passing by the camp have stopped their cars, entered onto the camp properties, and chased children while shouting ethnic slurs. In

the Winter of 2022, three of the residential buildings across from the main girls' campus were burned down under mysterious circumstances.

19. I have held a New York State concealed carry license since the around the late-80's/early 90's; I grew up around firearms, and am versed in firearms safety, and marksmanship.

20. It has been my custom and practice over the years to carry a handgun concealed on my person as a patron and as a staff member at the Oorah properties, including when the Boys' summer camp is in session, as well as in the synagogues, and other buildings where religious observation is conducted, for my protection and the protection of others.

21. Before New York enacted laws criminalizing the possession of firearms at "summer camps" and "places of religious observation," I and other Oorah staff and patrons were encouraged by Rabbi Mintz to carry a handgun while on the property, particularly during the summer camp. Due to the size of the campus and the fact that the kids' activities are spread out in numerous indoor and outdoor locations, multiple armed staff are required throughout the camp in the event of an active threat.

22. But with the enactment of statutes prohibiting the possession of firearms at "summer camps" and "places of religious observation" my right to possess a handgun in my home and to carry a handgun on the Boys' Camp campus and inside of the numerous buildings thereon now subjects me to felony criminal penalties, including arrest, incarceration, prosecution, and the permanent loss of my Second Amendment rights.

23. The violent attacks on Jewish people[2] targeting places of worship and places where children are – the most vulnerable of the population - are random and provide the victims with no notice or advance warning.

---

[2] It is well-documented that Antisemitic hate crimes are disproportionately higher than other forms of hate crimes. See e.g. https://www.justice.gov/crs/highlights/2021-hate-crime-statistics https://jewishinsider.com/2023/03/hate-crimes-

24. It is my intention to continue to exercise my right on a daily basis to possess a handgun in my home on the Oorah campus, and to carry a handgun concealed outside and throughout all of the buildings at the Oorah properties, including the synagogues, during the children's summer camp, which began on June 22, 2023, and permanently thereafter into the future, as I have in the past. The only reason that I cannot continue to engage in the same constitutionally protected conduct is because of the enforcement of Penal Law sections 265.01-e (c) and (f), which subject me to severe criminal penalties.

25. I am requesting that this Court preliminarily and permanently enjoin the defendants' enforcement of Penal Law sections 265.01-e (c) and (f) because I face a credible risk of enforcement of unconstitutional firearm regulations, which has become more imminent based on my public declarations herein.

26. I am aware that the Acting Superintendent of the New York State Police has vowed to enforce all criminal firearm statutes, which includes Penal Law sections 265.01-e (c) and (f).

27. Neither the Sheriff and his deputies, who are charged with enforcing the Penal Law, nor the district attorney and her assistants, who are charged with prosecuting violations of the Penal Law, have disavowed their intention to enforce Penal Law sections 265.01-e (c) and (f).

28. Sections 265.01-e (c) and (f) also interfere with the separation of church and state to the extent that they dictate which constitutional rights I can and cannot exercise at the synagogues and other religious buildings on the campuses, and impose severe punishment for violators. I should not be required to forego the exercise of my Second Amendment rights in order to practice those protected under the First Amendment.

---

antisemitism-fbi-rep-kathy-manning-anti-defamation-league-american-jewish-committee/ ;
https://www.jewishvirtuallibrary.org/statistics-on-religious-hate-crimes
https://www.nytimes.com/2023/03/23/us/antisemitism-anti-defamation-league-report html

29. Without the requested injunctive relief, I will suffer irreparable harm, including felony arrest, incarceration, prosecution and, if convicted, the permanent loss of the right to possess firearms – harm that will not be adequately compensated by any monetary award.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 20, 2023

Eric Schwartz